UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NORI EVANS,<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY MEDICAL CENTER a.k.a. UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA a.k.a. UMC,<br><br>Defendant. | Case No. 2:15-cv-01136-MMD-CWH<br><br>ORDER |

## I.    SUMMARY

Plaintiff Jori Evans sued Defendant University Medical Center of Southern Nevada, who terminated her employment, alleging she was discriminated against on the basis of her race, retaliated against for filing a prior lawsuit, and subjected to a racially hostile working environment. (ECF No. 1.) Pending before the Court are: (1) Plaintiff's motion for reconsideration of the Court's prior order granting summary judgment to Defendant on Plaintiff's employment discrimination and retaliation claims (ECF No. 84);[1] and (2) Defendant's motion for summary judgment on Plaintiff's hostile work environment claim (ECF No. 82).[2] As explained below, because the Court is unpersuaded there is any basis to reconsider its prior order, and because Plaintiff has failed to present sufficient, objective evidence necessary to establish at least one element of her hostile work environment

---

[1] The Court has also reviewed Defendant's response (ECF No. 92) and Plaintiff's reply (ECF No. 95).

[2] The Court has also reviewed Plaintiff's response (ECF No. 88) and Defendant's reply (ECF No. 93).

1 claim, the Court will deny Plaintiff's motion for reconsideration, and grant Defendant's second motion for summary judgment—resolving this case in Defendant's favor.

## II. BACKGROUND

The Court refers to its prior order for a description of the relevant facts, which it will not repeat here. (ECF No. 81 at 1-4.)

## III. LEGAL STANDARDS

### A. Motion for Reconsideration

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). But "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

A district court may decline to consider claims and issues that were not raised until a motion for reconsideration. *See Hopkins v. Andaya*, 958 F.2d 881, 889 n. 5 (9th Cir. 1992), *impliedly overruled on other grounds in Federman v. Cty. of Kern*, 61 F. App'x 438, 440 (9th Cir. 2003). It is not an abuse of discretion to refuse to consider new arguments in a reconsideration motion even though "dire consequences" might result. *Schanen v. United States Dept. of Justice*, 762 F.2d 805, 807-08 (9th Cir. 1985). Mere disagreement with an order is an insufficient basis for reconsideration. Nor should reconsideration be used to make new arguments or ask the Court to rethink its analysis. *See N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).

///

**B. Summary Judgment**

The Court refers to the legal standard governing summary judgment motions included in its prior order. (ECF. No. 81 at 4-5.)

IV. **DISCUSSION**

A. **Plaintiff's Motion for Reconsideration (ECF No. 84)**

Plaintiff requests that the Court reconsider its prior order granting Defendant summary judgment on Plaintiff's employment discrimination and retaliation claims. (ECF No. 84.) Defendant generally counters that the Court's prior order was correctly decided, and that Plaintiff's purported newly-discovered evidence offered in support of its motion is irrelevant and does not merit reconsideration. (ECF No. 92.) The Court agrees with Defendant. The Court will deny Plaintiff's motion because she has not met her burden to show she is entitled to reconsideration. The Court will address what it construes as the primary arguments she raises in her motion below.

1. **Evidentiary Issues**

Plaintiff argues that reconsideration is warranted to cure manifest injustice because the Court declined to consider some of Plaintiff's evidence in ruling on its prior order—because that evidence was improperly authenticated—without objection from Defendant, and without first giving Plaintiff an opportunity to cure its authentication issues. (ECF No. 84 at 4-5.) The manifest injustice arises, Plaintiff argues, because the Court would have reached a different result in its prior order had it considered Plaintiff's improperly authenticated evidence. (*Id.* at 5.) The Court disagrees. First, the Court is not required to give Plaintiff notice and an opportunity to cure its authentication issues before declining to consider improperly authenticated evidence, especially where, as here, Plaintiff is represented by counsel, and both parties' counsel conceded they made authentication mistakes in connection with their briefing on Defendant's first summary

1  judgment motion.³ (ECF Nos. 84-1, 84-2, 92-1 (fixing authentication issues).) *See also*
2  *Orr v. Bank of Am.*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (stating that a court can
3  only consider admissible evidence in ruling on a summary judgment motion, and evidence
4  must be authenticated to be admissible). Second, and contrary to Plaintiff's argument, the
5  Court alternatively considered the substance of each piece of evidence it declined to
6  consider in the prior order. (ECF No. 81 at 8 n.11, 10 n.13&14, 12-16, 20-23.) Thus, the
7  Court would have reached the same result in its prior order even if it overlooked all of the
8  evidentiary issues with Plaintiff's opposition to Defendant's first motion for summary
9  judgment.⁴ Therefore, the Court's evidentiary rulings in its prior order were not manifestly
10 unjust, and the Court declines to reconsider its prior order on this basis.

**2. Inferences**

Plaintiff also argues that the Court clearly erred as a matter of law—meriting reconsideration—because it drew inferences in Defendant's favor, which is inappropriate because Defendant moved for summary judgment, and the Court must draw all inferences in the nonmoving party's favor. (ECF No. 84 at 1, 9-11.) The Court is not persuaded by this argument. Mere disagreement with an order is an insufficient basis for reconsideration. Further, the summary judgment standard upon which Plaintiff relies is

---

³The Court is not persuaded by Plaintiff's reliance on *Romero v. Nevada Dep't of Corr.*, 673 F. App'x 641, 643-44 (9th Cir. 2016), offered in support of her argument that the Court should have given her advance notice of her authentication issues. (ECF No. 84 at 5.) There, the Ninth Circuit found that the district court did not err when it declined to consider improperly authenticated evidence, where the district court had previously pointed out those authentication issues at a hearing. But the *Romero* court did not say a district court must hold a hearing or otherwise give notice to a party of authentication issues with its exhibits before declining to consider them in ruling on a motion for summary judgment. *See Romero*, 673 F. App'x at 643-44. Thus, Plaintiff's citation to *Romero* does not change the Court's analysis or merit reconsideration of the Court's prior order.

⁴In addition to the Court's authentication rulings, Plaintiff also challenges the Court's rulings that certain pieces of proffered evidence were hearsay. (*See, e.g.*, ECF No. 84 at 11-12.) The Court considered the merits of all of the evidence Plaintiff presented in the alternative, and would not have reached a different result had all of Plaintiff's proffered evidence been admissible.

4

tempered by an overarching requirement of reasonableness—for example, an issue is genuine if there is a sufficient evidentiary basis on which a *reasonable* fact-finder could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The Court need not draw every *possible* inference in Plaintiff's favor. Plaintiff specifically takes issue with the Court's finding that Defendant's termination of Plaintiff was not pretextual (ECF No. 84 at 9), but in its prior order, the Court considered all of Plaintiff's proffered evidence, and concluded that evidence, even added together, did not lead to a reasonable inference that Plaintiff's termination was pretextual.[5] (ECF No. 81 at 12-16.) Moreover, the evidence Plaintiff offered did not amount to "specific" and "substantial" evidence of pretext to create a triable issue even though the Court drew all reasonable inferences in her favor. (ECF No. 81 at 12-16.) *See also Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1113 (9th Cir. 2011). Because the inferences Plaintiff wishes the Court had drawn in her favor are not reasonable, the Court declines to reconsider its prior order on this basis.

### 3. Direct vs. Circumstantial Evidence

Plaintiff also argues that the Court clearly erred in characterizing two key pieces of evidence as circumstantial evidence, when the Court should have considered them to be direct evidence of "racial and retaliatory animus." (ECF No. 84 at 1, 19-21, 22.) Plaintiff further argues this makes a difference because a different standard applies to direct evidence under the applicable discrimination and retaliation legal frameworks that would

---

[5]Plaintiff discusses *Schwartz v. Clark Cty.*, 650 F. App'x 542 (9th Cir. 2016) in her motion in an apparent attempt to persuade the Court that it erred in finding Plaintiff proffered insufficient evidence of pretext to survive summary judgment. (ECF No. 84 at 10-11.) As *Schwartz* was decided before Plaintiff filed its opposition to Defendant's first motion for summary judgment, Plaintiff could have cited it then, but did not. (ECF No. 64.) Thus, the Court need not consider *Schwartz* now. Further, because *Schwartz* is distinguishable, the Court is not persuaded that *Schwartz* should change the Court's analysis in its prior order. In *Schwartz,* there was much more—and much more compelling—evidence that the plaintiff's supervisor singled him out for a layoff than Plaintiff has presented in this case.

have made Plaintiff's claims more likely to have survived summary judgment. (*Id.* at 5-8.) The Court is also unpersuaded by this argument because—as explained below—the evidence Plaintiff characterizes as direct was—and is—properly characterized as circumstantial. As the Court treated this evidence as circumstantial in its prior order, reconsideration is unwarranted.

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (citation, internal punctuation, and quotation marks omitted). In contrast, circumstantial evidence is evidence "that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998), *as amended* (Aug. 11, 1998). In other words, direct evidence is evidence that requires little or no inference that it is motivated by racial animus,[6] while circumstantial evidence requires a larger inference. The Court finds that it properly characterized both pieces of evidence that Plaintiff raises here as circumstantial evidence in its prior order because both require a nonnegligible inference to impute racial animus to them. The Court addresses each of the two pieces of evidence, in turn, below.

  i.   *"The Black Issue"*

The Court finds that it correctly categorized Plaintiff's supervisor Alicia Jones' purported utterance of the phrase "the black issue" to Alan Booker as circumstantial evidence, and will not reconsider its prior order on that basis. (ECF No. 81 at 13-14 (treating it as circumstantial evidence and determining it was not specific and substantial evidence supporting a finding of pretext in granting summary judgment to Defendant on Plaintiff's discrimination claim).) Jones' use of the phrase "the black issue" is circumstantial evidence because it requires an inference to get to the conclusion Plaintiff would like the Court to draw—that Jones used the pretext of recommending the

---

[6]Plaintiff's allegations center on race discrimination.

6

elimination of Plaintiff's position as part of a reduction in force to fire Plaintiff because Jones is hostile to African Americans. Specifically, the Court would have to infer the phrase "the black issue" was motivated by Jones' racial animus even though the context suggests otherwise—as explained in the Court's prior order. (ECF No. 81 at 14.)

According to Booker, Jones used the phrase "the black issue" when she was telling him that she was considering making him the night shift manager. (ECF No. 66 at 6-7.) That was because Booker is African American, and an African American employee on the night shift, Beverly Watkins, had previously accused another supervisor (a white women) of being racist when the supervisor discussed what she viewed as a work performance issue with her, and disciplined her for it. (*Id.*) Booker said that Jones told him having him be the night shift supervisor would solve "the black issue," which at least reasonably could have meant that he could more easily have disciplined Watkins if any issues arose with her performance in the future, without Watkins calling him a racist or otherwise inferring that the real reason she was being disciplined was racism, because he is also African American. (*Id.* at 7.) Indeed, this is what Booker said he thought Jones meant.[7] (*Id.*) Therefore, the Court would have to draw an inference to conclude Jones' purported use of the phrase "the black issue" was evidence of racial animus that motivated her decision to eliminate Plaintiff's position. Jones' purported use of the phrase "the black issue" is thus properly characterized as circumstantial, not direct, evidence.

///

///

---

[7]The Court further notes that no part of this purported statement directly related to Plaintiff, nor did Jones say it to Plaintiff. The Court acknowledges, as Plaintiff argues, that it did not have to, nor must it have been said to Plaintiff. (ECF No. 84 at 19-21.) However, the Court notes that in *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005), upon which Plaintiff relies for these propositions, the plaintiff's sexist supervisor said a number of sexist things directly to the plaintiff, and it was clearer those statements were motivated by sexism than it is here that Jones was motivated by racism in saying "the black issue." Thus, the Court finds that *Dominguez-Curry* is distinguishable from this case. *Dominguez-Curry* does not require the Court to reconsider its prior order.

### ii. The Hit List

Similarly, the Court also properly characterized Jones' purported 'hit list' as circumstantial evidence in its prior order (ECF No. 81 at 13-14), and will not reconsider the order on that basis. Even assuming Jones had a physical 'hit list,'[8] the evidence before the Court suggests that there were non-African American employees on Jones' 'hit list.' (ECF Nos. 66-1 at 4, 66-2 at 16, 19.) Thus, the Court would have to draw an inference that Jones placed people on her 'hit list' because they were African American—despite the evidence to the contrary—to determine the 'hit list' showed Jones harbors racial animus. Because the Court would have to draw such an inference, the 'hit list' was also properly categorized as circumstantial evidence in the Court's prior order. In sum, the Court finds that Plaintiff has not met her burden to establish that the Court should reconsider its prior order based on the way it classified the pieces of Plaintiff's proffered evidence discussed above.

### 4. Purported Newly-Discovered Evidence

Plaintiff further argues the Court should reconsider its prior order because of claimed newly-discovered evidence that purportedly shows in "late March, early April 2018, Defendant reinstated the Supervisor position which it did away with to terminate Plaintiff, as part of a layoff." (ECF No. 84 at 14.) The Court declines to reconsider its prior order in light of this purported new evidence because it is too far removed in time to be relevant to the circumstances surrounding Plaintiff's termination in the fall of 2014. Events several years subsequent to Plaintiff's termination do not bear directly on whether Plaintiff's termination was pretextual, and thus are not new evidence as regards Plaintiff's case.

///

///

---

[8]The evidence before the Court suggests it is more likely 'the hit list' was a turn of phrase Jones would use to describe people who had done something to upset her, rather than a physical list. (ECF Nos. 66-1 at 4, 66-2 at 19.)

### 5. Request to Re-Open Discovery

Because the Court declines to reconsider its prior order—as described above—the Court also denies Plaintiff's request to re-open discovery in this case. (ECF No. 84 at 15.)

### B. Defendant's Second Motion for Summary Judgment (ECF No. 82)[9]

Defendant argues that Plaintiff cannot establish the elements of her prima facie case of hostile work environment because Plaintiff was never directly subjected to verbal or physical conduct of a racial nature, and the conduct she was subjected to was insufficiently severe or pervasive to alter the terms or conditions of her employment. (ECF No. 82 at 6-7.) In her opposition, Plaintiff points to the same evidence she proffered in opposition to Defendant's first summary judgment motion on her discrimination and retaliation claims—in an attempt to show she was subjected to a racially hostile work environment. (ECF No. 88.) However, the Court agrees with Defendant that the conduct Plaintiff was subjected to was insufficiently severe or pervasive to alter the terms or conditions of her employment—and will therefore grant Defendant's motion.

A hostile work environment is one where employees work in an offensive or abusive environment. *See Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991).[10] "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, SFV v. Vinson*, 477 U.S. 57, 65 (1986) (citation omitted). But Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A hostile work environment claim based on race

---

[9] Plaintiff did not list hostile work environment as one of her claims, but the Court construed her Complaint as alleging one. (ECF No. 81 at 3 n.4, 4 n.5.) The Court granted Defendant leave to file an additional motion for summary judgment in its prior order because Defendant addressed Plaintiff's hostile work environment claim for the first time in its reply in support of its first motion for summary judgment. (*Id.* at 24.)

[10] "Because the elements to prove a hostile work environment are the same for both racial harassment and sexual harassment, cases analyzing both types of harassment are relevant to our analysis." *Vasquez*, 349 F.3d at 642.

9

requires the plaintiff to establish three essential elements: (1) that she was "subjected to verbal or physical" conduct of a racial nature; (2) "the conduct was unwelcome;" and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Vasquez*, 349 F.3d at 642 (citations omitted). "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation and internal quotation marks omitted). "In addition, the working environment must both subjectively and objectively be perceived as abusive." *Id.* (citation and internal quotation marks omitted).

The alleged conduct Plaintiff points to in support of her claim fails to meet the third element of severe or pervasive conduct. Plaintiff relies on the following alleged unwelcome conduct: (1) she worked in a racially hostile environment because her supervisor referred to "the black issue" when speaking to another employee about a conflict between two other employees; (2) Plaintiff's supervisor (and others in leadership roles) disproportionately audited and generally treated other employees of color that Plaintiff supervised less favorably than similarly-situated white employees; and (3) Plaintiff had to attend some meetings where several supervisors and an employee from Defendant's Human Resources department ("HR Rep") were also present. (ECF No. 88.) The Court addresses this alleged conduct below.

    **1.**    **Alleged Comment re: "The Black Issue"**

Regarding "the black issue," it is unclear whether Plaintiff was aware of this purported utterance while she was employed by Defendant. Plaintiff was terminated in the fall of 2014. (ECF No. 81 at 2-3.) Setting aside authentication concerns (*Id.* at 8), the evidence Plaintiff proffers to show that Jones used the phrase "the black issue" is a LinkedIn message Booker sent to Plaintiff in February 2015 in response to an earlier

February 2015 message Plaintiff sent to Booker inquiring about anything Jones might have said to Booker while he was employed there, along with Booker's supporting deposition testimony that Jones used the phrase "the black issue" in conversation with Booker. (ECF Nos. 64-3 at 2, 66 at 7.) Thus, the evidence is not clear Plaintiff knew Jones used this phrase while she was still employed by Defendant. If Plaintiff was unaware that Jones used the phrase "the black issue" when she was still employed by Defendant, Jones' use of that phrase cannot have contributed to Plaintiff's alleged perception that she worked in a racially hostile environment.

But even if Plaintiff was aware Jones said it while she worked for Defendant, it is undisputed that nobody ever used the phrase "the black issue" in Plaintiff's presence, or otherwise directed it at her. In addition, there is no evidence before the Court that Jones used this phrase more than once. Thus, Jones' purported single utterance of the phrase "the black issue" is not sufficiently severe or pervasive so as to create a racially hostile working environment. *See, e.g.*, *Vasquez*, 349 F.3d at 642-44 (affirming grant of summary judgment to defendant employer on hostile work environment claim even where latinx plaintiff's supervisor directly told him he had "a typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics do good in the field."); *see also Kennedy v. UMC Univ. Med. Ctr.*, 203 F. Supp. 3d 1100, 1107-08 (D. Nev. 2016) (granting summary judgment to Defendant (the same as in this case) on the plaintiff's hostile work environment claim stemming from the same reduction in force as this case where the plaintiff's supervisor "described people in the office [directly to the plaintiff] as 'Black lady' or 'Black guy,'" and where her supervisor once told the plaintiff "that she did not look or sound Black").

### 2. Alleged Disproportionate Audits

Plaintiff argues that the alleged disproportionately harsh supervision and auditing of the nonwhite employees she supervised—by her supervisors—evidences a hostile

work environment. (ECF No. 88 at 5.) But even if true,[11] this does not tend to show that Plaintiff was subjected to verbal or physical conduct of a racial nature. Nor is the alleged conduct sufficiently severe or pervasive so as to alter her work environment.

### 3. Meetings with HR Rep

Plaintiff also contends she was subjected to a racially hostile work environment because, on more than one occasion, more than one of Plaintiff's supervisors met with her, along with an HR Rep. (ECF No. 88 at 7-9.) But Plaintiff points to only two incidents where this occurred. (*Id.*) In one case, Plaintiff does not argue an HR Rep was present, and the meeting was about Plaintiff's decision not to discipline another employee whom two supervisors thought Plaintiff should have disciplined. (*Id.* at 7.) In the other case, an HR Rep was present because the purpose of the meeting was to discuss another employee that had received complaints from the nursing department. (*Id.* at 7-9.) As Plaintiff only points to two cases that do not appear to be close in time, this conduct cannot be severe or pervasive. *See* discussion *supra.* Further, Plaintiff has not proffered any objective evidence[12] suggesting that these two meetings were called in an attempt to harass Plaintiff because of her race, or that any other employee said anything racially offensive to her in these meetings. In the absence of any evidence suggesting these meetings were racially hostile or abusive, this argument does not help Plaintiff's hostile work environment claim survive summary judgment.

In sum, the conduct Plaintiff alleges she was subjected to in support of her hostile work environment claim is less pervasive or severe than the conduct at issue in cases where other courts nonetheless granted summary judgment to an employer defendant.

---

[11] Plaintiff's evidence is anecdotal, not quantitative. (ECF No. 88 at 5-6.)

[12] Plaintiff appears to subjectively believe this is why these meetings occurred and included these participants. (ECF No. 88 at 7-8 (citing Plaintiff's own deposition testimony).) But Plaintiff's working environment must be both subjectively and objectively abusive for Plaintiff's claim to survive summary judgment. *See Vasquez,* 349 F.3d at 642 (citations omitted).

*See Vaquez,* 349 F.3d at 642-44; *Kennedy,* 203 F. Supp. 3d at 1107-08. Therefore, the Court grants summary judgment to Defendant on Plaintiff's hostile work environment claim.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiff's motion for reconsideration (ECF No. 84) is denied.

It is further ordered that Defendant's second motion for summary judgment on Plaintiff's hostile work environment claim (ECF No. 82) is granted.

The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

DATED THIS 5th day of March 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE